# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISHMAEL A. BURK, JR., | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 19-CV-5792 |
| | : | |
| JOAN CROWE, *et al.*, | : | |
| *Defendants*. | : | |

## MEMORANDUM

**PAPPERT, J.**                                                                                                     **JANUARY 3, 2020**

      Plaintiff Ishmael A. Burk, Jr., a prisoner incarcerated at SCI-Smithfield, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, raising constitutional claims based on his recent imprisonment at the Bucks County Correctional Facility. He seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Burk leave to proceed *in forma pauperis*, dismiss certain of his claims, and permit him to proceed on other claims. The Court will also give Burk an opportunity to file an amended complaint prior to directing service.

## I

      Burk brings this case against the following Defendants, all of whom appear to be employed at the Bucks County Correctional Facility: (1) Joan Crowe; (2) Dr. Cassidy; (3) Lillian Budd; (4) Paul Lagana; and (5) two John Doe correctional officers. Burk alleges that the events giving rise to his claims occurred between January and March 2018, during his incarceration in the RHU and MHU,[1] where he was moved "after [he] was sentenced." (Compl. ECF No. 2 at 2 & 10.) Burk raises claims based on several sets of allegations.

---

[1] Burk does not define those terms; the Court presumes they refer to the Restricted Housing Unit and the Medical Housing Unit.

First, Burk alleges that Dr. Cassidy switched his medication from Lexipro to Zyprexa, which caused him to throw up "all the time" and made his depression intolerable. (*Id.* at 10.) Burk alleges that he wrote to Dr. Cassidy, Budd, Crowe and Lagana "telling all what was happening" and that he also submitted a grievance, but nothing happened. (*Id.*) By the end of January 2018, Burk wrote to Dr. Cassidy to inform her that he would not be taking his medication anymore because it worsened his depression. (*Id.*) He also alleges that he wrote to her several times regarding his medication and told her his depression was getting worse. (*Id.* at 10-11.)

Second, Burk alleges that when he refused to take his medication, the two John Doe correctional officers would restrain him and force him to take his medication. (*Id.* at 10.) He also alleges that the officers turned his water off for twenty days because he refused to take his medication, and that they threatened not to feed him if the behavior continued. (*Id.*) Burk contends that the John Doe officers then "skip[ped] his door" at meal time, although it is not clear how many meals Burk did not receive. (*Id.*) According to Burk, "when this happen[ed]" he wrote to Crowe, Dr. Cassidy, Budd, and Lagana but did not receive a response. (*Id.*)

Third, Burk alleges that he fell off his bed after taking his medication, injuring his right arm, and wrote to Crowe apparently asking to be seen for medical treatment. (*Id.* at 11.) Burk contends that he was "refused medical by them" but does not allege anyone else was involved in matters related to his arm or clarify this allegation. (*Id.*) Burk also alleges that he still experiences discomfort in his arm. (*Id.*)

Fourth, Burk challenges his placement in the "MHU/RHU with no hearing at all and no type of explanation." (*Id.*) He contends that when Lagana and Budd made rounds on those

units, he would inquire as to why he was not on a regular block, but he did not receive an answer. (*Id.*)

Fifth, Burk challenges the conditions in the MHU/RHU. He claims that the cell he was housed in for three months smelled of urine, that no one cleaned the cell during that time, and that he contracted an infection that caused scabs on his leg. (*Id.*) He also alleges that when "the guards" would take him to see his attorney, he would ask to "go to medical" but they denied his request. (*Id.*) Burk also alleges that he was denied phone calls to his family; it appears he wrote to Budd and Lagana about the phone calls but did not receive a response. (*Id.*)

In the section of the form complaint used by Burk that asks for information about injuries, Burk indicates that his right rotator cuff, foot, and "big toe" remain injured, although he does not raise any factual allegations that relate to his foot or toe. (*Id.* at 3.) He seeks damages in the amount of $80,000. (*Id.* at 5.)

II

The Court grants Burk leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[2] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[2] However, as Burk is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

3

(quotations omitted). Conclusory allegations do not suffice. *Id.* The Court construes Burk's allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

III

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" for liability to attach under § 1983. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* The Court will address Burk's allegations in turn.

A

Deliberate indifference to a prisoner's serious medical needs violates a prisoner's rights under the Eighth Amendment.[3] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison

---

[3] The Eighth Amendment governs claims brought by convicted and sentenced inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166

official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Additionally, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

Here, Burk alleges that Dr. Cassidy switched his medication and that, as a result of the switch, he began throwing up regularly and his depression became intolerable.[4] He also alleges that he made Dr. Cassidy aware of these facts but that Dr. Cassidy did not respond and Burk's

---

(3d Cir. 2005). Here, Burk alleges that he was moved to the MHU "after [he] was sentenced," so the Eighth Amendment applies to his claims. (Compl. ECF No. 10.)

[4] The Court assumes for purposes of this Memorandum that Burk was suffering from depression for which he was medicated, which would constitute a serious medical need. *See Goodrich v. Clinton Cty. Prison*, 214 F. App'x 105, 111 (3d Cir. 2007) (mental illness may constitute a serious medical need when diagnosed by psychologist or psychiatrist); *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979) ("Although most challenges to prison medical treatment have focused on the alleged deficiencies of medical treatment for physical ills, we perceive no reason why psychological or psychiatric care should not be held to the same standard.").

5

medication was apparently not changed. Dr. Cassidy's initial decision to switch Burk's medication is not a basis for a deliberate indifference claim because even if Dr. Cassidy erred in exercising her medical judgment, Burk has not alleged any facts supporting an inference that Dr. Cassidy had reason to believe the switch would pose a risk to his health or safety. *See Turner v. Leggett*, 421 F. App'x 129, 132 (3d Cir. 2011) (per curiam) (inmate did not state a claim for deliberate indifference where he "disagreed with doctors' decisions to eliminate or change" certain of his medications); *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("[B]y itself, Dr. Napoleon's decision to give Nazario Dilantin instead of Epitol is not actionable."). However, Burk's allegation that Dr. Cassidy failed to respond or change Burk's medication after being informed that the switch was causing him serious side effects could support a finding of deliberate indifference. *See White*, 897 F.2d at 110 ("What may state a cause of action is Dr. Napoleon's persistence in using Dilantin, or Dilantin plus phenobarbital, after Nazario told him that his seizures had increased in violence and frequency."). Accordingly, although the Complaint is sparsely pled, under a liberal construction, Burk will be permitted to proceed at this time on his claim against Dr. Cassidy.

Burk has not stated a claim against any other Defendant in connection with the medication change. He generally alleges that he wrote letters to and/or filed grievances with Budd, Crowe, and Lagana but the specifics of his allegations on this topic are generalized, unclear, and undeveloped. It is also not clear from the Complaint what these Defendants' roles are within the facility and, thus, whether they would be in a position to evaluate Burk's medical complaints. It appears that Lagana is the Warden of the Bucks County Correctional Facility, that Budd is the Assistant Warden, *see Burk v. Budd*, Civ. A. No. 18-4702, 2019 WL 3765621, at *1

6

(E.D. Pa. Aug. 9, 2019),[5] and that Crowe was at one point the Nursing Supervisor at the Bucks County Correctional Facility, *see Hellyer v. Cty. of Bucks*, Civ. A. No. 10-2724, 2014 WL 413874, at *1 (E.D. Pa. Jan. 31, 2014), which may or may not have been her role at the time of the events giving rise to Burk's claims.

In general, "[m]erely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (per curiam); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (per curiam) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (per curiam) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."). Likewise, the failure of a defendant who lacks medical training to respond to a prisoner's letter when the prisoner is under the care of a doctor generally does not support a plausible deliberate indifference claim. *See Diaz v. Warden Lewisburg USP*, 630 F. App'x 148, 151 (3d Cir. 2015) (per curiam) (prison officials who were administrators and who "are not themselves physicians" were not liable for deliberate indifference where plaintiff could not establish that their "involvement in the matter consisted of anything more than, at most, receiving letters from Diaz expressing his dissatisfaction with the medical care he was receiving"); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (non-medical defendants who did not respond to prisoner's letters could not be "considered

---

[5] Burk filed a prior Complaint against these Defendants.

deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor"). As Burk's allegations against Budd, Crowe, and Lagana are apparently based only on their failure to respond to his letters, Burk has not stated a deliberate indifference claim against them. *See Spruill*, 372 F.3d at 236; *Burk*, 2019 WL 3765621, at *4 (dismissing claims against defendant where "[t]he only fact Burk alleges regarding [the defendant's] personal involvement is that Burk sent letters to [the defendant], but never heard back from him").

B

Burk alleges that Defendants John Doe correctional officers forcibly medicated him, and denied him food and turned off the water in his cell because he refused to take the medication prescribed by Dr. Cassidy. "[C]onvicted prisoners[] . . . retain a limited right to refuse treatment," although this right must also be balanced against valid state interests. *White*, 897 F.2d at 113; *see also Washington v. Harper*, 494 U.S. 210, 221–22 (1990) (holding that prisoners possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment" that must be balanced against the state's legitimate interests). The Court of Appeals for the Third Circuit has also construed forced medication claims brought by prisoners under the Eighth Amendment. *See Aruanno v. Glazman*, 316 F. App'x 194, 195 (3d Cir. 2009) (analyzing forced medication claim under Eighth Amendment and Due Process Clause).

The Court understands Burk to be alleging that the Doe Defendants forced him to take medication he refused and then retaliated against him for exercising his right to refuse medication by shutting off the water in his cell and denying him food. Burk has alleged a basis for proceeding on these claims at this time. *See Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir.

2017) ("To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) 'he suffered some adverse action at the hands of prison officials,' and (3) 'his constitutionally protected conduct was a substantial or motivating factor in the decision' to take that action." (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001))); *White*, 897 F.2d at 114 ("White had a right to refuse treatment protected by the Due Process clause of the Fourteenth Amendment. He may not be sanctioned for exercising that right.")

However, Burk has not sufficiently alleged a basis for proceeding on these claims against any other Defendants. Again, his general allegation that he "wrote to" Crowe, Cassidy, Budd, and Lagana "when this happen[ed]" is too vague and undeveloped to state a plausible basis for liability against these individuals. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief." (internal quotations omitted)); *Burk*, 2019 WL 3765621, at *4 (lone allegation that the defendant failed to respond to letters does not state a plausible claim).

## C

The Court understands Burk to be raising a claim for deliberate indifference to medical needs based on his allegation that he was denied treatment for his arm, which was injured after he fell off his bed. The only allegation here relevant to any of the Defendants is Burk's assertion that he "wrote to Ms. Crowe asking her if [he] [could] be seen because [he] fell off [his] bed" and his "right arm was hurting." (Compl. ECF No. 2 at 11.) As noted above, to state a plausible claim against Crowe, or any other Defendant, for denial of care for his arm, Burk must allege facts showing that they were deliberately indifferent to his serious medical needs. He has not done so here because his allegation is far too undeveloped to establish a plausible inference of

9

deliberate indifference. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (explaining that "a complaint must do more than allege the plaintiff's entitlement to relief," rather, "[a] complaint has to 'show' such an entitlement with its facts.").

D

Burk alleges that he was housed in the MHU/RHU without a hearing or explanation, which the Court construes as a due process claim. In the prison context, "[d]ue process protection for a state created liberty interest is . . . limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 486)). Burk's contention that he was held in the MHU/RHU for three months after he was sentenced does not establish an atypical or significant hardship sufficient to trigger due process protection, so he has not stated a plausible claim on that basis. *See Griffin*, 112 F.3d at 708 (holding that "exposure to the conditions of administrative custody for periods as long as 15 months falls within the expected parameters of the sentence imposed [. . .] by a court of law" and does not constitute a due process violation (quotation omitted)); *see also Williams v. Armstrong*, 566 F. App'x 106, 108 (3d Cir. 2014) (per curiam) (prisoner failed to allege liberty interest based on four-month placement in the RHU).

E

Burk's claims based on the conditions in the MHU/RHU concern the smell of urine, failure to clean his cell, and denial of phone calls. These claims fail because Burk has not

alleged that any of the Defendants were personally involved in or otherwise responsible for the challenged conditions.[6] Although the Complaint could be read to suggest that Burk wrote to Budd and Lagana about the denial of phone calls, those allegations are too vague to support a claim and do not, in any event, establish a basis for liability on their own. Regarding Burk's allegation that unidentified guards denied his request to go to the medical department when he was being taken to see his attorney, it is not clear whether those guards are the same John Doe Defendants named in the Complaint. Even assuming so, Burk has not alleged sufficient facts to plausibly support an inference that the guards acted with deliberate indifference to his serious medical needs by denying him access to the medical department for unspecified medical issues on the occasions in question. In sum, Burk has not alleged a plausible basis for a claim against any of the Defendants based on these conditions in the MHU/RHU.

IV

For the foregoing reasons, the Court will grant Burk leave to proceed *in forma pauperis* and permit him to proceed on the following claims: (1) claims against Dr. Cassidy that she was deliberately indifferent to his serious medical needs by keeping him on Zyprexa after he allegedly suffered adverse effects from that medication; and (2) claims against the John Doe Defendants for forcibly medicating him and turning of the water in his cell and denying him food

---

[6] In general, conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (citations and internal quotation marks omitted). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.*

when he refused to take his medication.[7] The Court will dismiss Burk's remaining claims without prejudice to amendment in the event Burk can allege additional facts to support the dismissed claims. An Order follows, which provides further instruction as to amendment.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**

---

[7] Without identifying information, the Court will not be able to effect service on these Defendants.